UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTIAN GENITRINI and AMERIGEN
GLOVERSVILLE CORP.

                              Plaintiffs,

v.                                                                      6:04-CV-1432
                                                                        (GHL)
MAKO HOLDINGS INTERNATIONAL, LLC;
RICHARD MAKOUJY and JACQUELINE PALUMBO

                              Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| KRISS, KRISS, BRIGNOLA & PERSING, LLP<br>Counsel for Plaintiffs<br>350 Northern Boulevard<br>Suite 306<br>Albany, New York 12204 | DANIEL J. PERSING, ESQ. |
| OFFICE OF RICHARD B. ANCOWITZ<br>Counsel for Defendant Mako Holdings Int'l, LLC<br>P.O. Box 693<br>Guilderland, New York 12084 | RICHARD B. ANCOWITZ, ESQ. |
| HEIMERL LAW FIRM<br>Counsel for Defendants Makoujy and Palumbo<br>One Anderson Hill Road, Suite 105<br>Bernardsville, New Jersey 07924 | WOLFGANG HEIMERL, ESQ. |

GEORGE H. LOWE, United States Magistrate Judge[1]

## MEMORANDUM-DECISION AND ORDER

**I.    PRELIMINARY STATEMENT**

      This action, brought by Plaintiffs Christian Genitrini ("Genitrini") and Amerigen

---

[1] Upon the parties' consent, this case was referred to the undersigned "to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73." Dkt. No. 16.

Gloversville Corp. ("Amerigen Corp.") arises out of the purchase and sale of three properties located in Gloversville, New York. Defendants Mako Holdings International, LLC ("Mako Holdings"), Richard Makoujy ("Makoujy"), and Jacqueline Palumbo ("Palumbo") move for summary judgment dismissing the Complaint.[2] There has been no pretrial discovery.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Schwapp v. Town of Avon*, 118 F.2d 106, 110 (2d Cir. 1997) (citation omitted); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).

However, when the moving party has met is initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 477 U.S. 574-585-87 (1986). The nonmoving party must do

---

[2] Makoujy and Palumbo initially appeared *pro se* in this action. Makoujy, in his *pro se* capacity, made the summary judgment motion, purportedly on behalf of all Defendants. Dkt. No. 7. Plaintiffs disputed his right to do so (Dkt. No. 14 at 9-10), and the Court issued a letter-order addressing this issue. Dkt. No. 18. Palumbo subsequently filed an affidavit providing that she joined in Makoujy's motion. Dkt. No. 19. Shortly thereafter Mako Holdings, represented by counsel, filed its own summary judgment motion papers (which for the most part are identical to Makoujy's papers). Dkt. No. 30. At the time of oral argument Makoujy and Palumbo were represented by counsel.

[3] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 477 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.* 477 U.S. at 247-48. "A dispute regarding a material fact is **genuine** if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ross v. McGinnis*, Civ. No. 00-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) (internal quotations omitted) (emphasis added).

### III.   STATEMENT OF MATERIAL FACTS

The facts set forth in a defendant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[4] and are not specifically controverted by the plaintiff.[5]

To "specifically controvert[]" each of the statements of material fact in a defendant's Rule 7.1(a)(3) Statement of Material Facts, a plaintiff must file a **response** to the Statement of Material Facts that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" **and** that "set[s] forth a specific citation to the record where the factual issue arises."[6]

---

[4] *See Vermont Teddy Bear Co., Inc. V. 1-800 Beargram Co.*, Civ. No. 03-7030, 2004 WL 1472675, at *3 (2d Cir. July 1, 2004) (citations omitted).

[5] *See* L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[6] L.R. 7.1(a)(3); *see, e.g.*, *Jones v. Smithkline Beecham Corp.*, 309 F. Supp. 2d 343, 346 (N.D.N.Y. 2004) (McAvoy, J.) ("[W]here Plaintiff has failed to provide specific reference to the record in support of her denials or has otherwise failed to completely deny Defendant's assertions of fact, those assertions will be taken as true."); *Lee v. Alfonso*, Civ. No. 97-1741, 2004 U.S. Dist LEXIS 20746, at *15 (N.D.N.Y. Feb. 10, 2004) (Scullin, C.J.) ("Plaintiff does not offer any facts to support his claims that would raise an issue of fact. Nor has he overcome his failure to respond to Defendants' Rule 7.1(a)(3) Statement. Therefore, Defendants' version of the facts remains uncontroverted."); *Margan v. Niles*, 250 F. Supp. 2d 63, 67 n.1 (N.D.N.Y. 2003) (Hurd, J.) ("Plaintiff's Rule 7.1(a)(3) statement, which contains

Portions of the record sufficient to create a "factual issue" include affidavits or verified complaints.[7] However, such an affidavit or verified complaint must, among other things, be based "on personal knowledge."[8] An affidavit or verified complaint is not based on personal knowledge if, for example, it is based on mere suspicion, rumor, hearsay, or secondhand information.[9] Similarly, such an affidavit or verified complaint must not be general and conclusory.[10] The Fred Newton affidavit (Dkt. No. 15), which is considered below, meets the

---

numerous denials, does not contain a single citation to the record. Because plaintiff's response Rule 7.1(a)(3) statement does not comply with the local rules, it has not been considered."); *Mehlenbacher v. Slafrad*, Civ. No. 99-2127, 2003 U.S. Dist. LEXIS 9248, at *4 (N.D.N.Y. June 4, 2003) (Sharpe, M.J.) ("Since [the plaintiff] has failed to respond to the defendant's statements of material fact, the facts as set forth in the defendants' Rule 7.1 Statement . . . are accepted as true."); *Adams v. New York State Thruway Auth.*, Civ. No. 97-1909, 2001 U.S. Dist. LEXIS 3206, at *2 n.1 (N.D.N.Y. Mar. 22, 2001) (Mordue, J.) ("[T]o the extent plaintiff's responses violate Local Rule 7.1, and are not properly admitted or denied, the Court will deem defendant's statement of fact admitted by plaintiff.").

[7] *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d Cir. 2004) )"[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"); *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d. Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") (citations omitted); Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

[8] Fed. R. Civ. P. 56(e) (requiring "personal knowledge"); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) (citations omitted), *cert. denied sub nom.*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[9] *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd* 995 F.2d 1147 (2d Cir. 1993).

[10] *See Patterson*, 375 F.2d at 219 ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") (citations omitted); *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.2d 61, 63 (2d Cir. 1996) (rejecting "conclusory" statements in opposing affidavit); *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56(e) is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings"); Fed. R. Civ. P. 56(e) (requiring more than "mere allegations or denials of . . . [a pleading] . . . but . . . specific facts showing that there is a genuine issue for trial").

standard for creating a factual issue.

The Court regrets that the Defendants did not prepare a more complete Rule 7.1(a)(3) statement. It appears to the Court that there are many material facts that could have been set forth in such a statement and that Plaintiffs could not have controverted. Such an approach would have simplified resolution of the motion, and perhaps have led to a different result.

## IV. ANALYSIS

### A. Standing

With regard to the transaction concerning a property located at 106 East Fulton Street, Gloversville ("106 East Fulton"), Defendants assert that there is no privity of contract between either of the Plaintiffs and any of the Defendants. Therefore, they argue, summary judgment should be granted to them on the first, second, and fourth causes of action.

The Agreement of Purchase and Sale concerning the 106 East Fulton property states, in its first paragraph:

> THIS AGREEMENT OF PURCHASE AND SALE ("Agreement") is made and entered into by and between Mako Holdings International, LLC, with offices located at 41 Academy Street, Amsterdam, NY 12010 ("Seller") and 106 East Fulton, LP, a limited partnership to be formed in New York State, whose obligations hereunder shall be guaranteed by Christian Genitrini ("Buyer").

Dkt. No. 7, Ex. A. Genitrini argues that he indeed was a party to the contract, "both individually and prospectively as a partner in the partnership which was envisioned to be formed to take ownership of the property." Dkt. No. 12, Genitrini Aff. ¶ 3. He also seems to argue that because the deposit funds were his personal monies and because he personally paid part of the purchase price, he therefore is a party to the contract. Tellingly, no legal authority is cited in support of

these arguments.

Nevertheless, resolving all ambiguities and drawing all reasonable inferences against the Defendants, as I must, I find that a genuine issue of material fact exists with respect to whether Genitrini was a party to the Agreement of Purchase and Sale. In particular, despite the language quoted above from the Agreement, the signature page identifies the buyer as "106 East Fulton, LP by: Christian Genitrini **and as an individual**." Dkt. No. 7, Ex. A (emphasis added). At this stage of the litigation, prior to any discovery, I find that in light of this language a reasonable juror could conclude that Genitrini was a party to the Agreement "as an individual." Therefore, on the standing issue, I deny the Defendants' motion for summary judgment against Genitrini on the first, second, and fourth causes of action.

I reach a different conclusion, however, with respect to Amerigen Corp., whose name appears nowhere in the Agreement of Purchase and Sale. Plaintiffs argue, however, that Genitrini's rights in the Agreement were assigned by him to Amerigen Corp. pursuant to a certain Assignment of Contract. Dkt. No.12, Ex. C. This argument gives me initial pause because if it had merit it would seem to follow that Genitrini, having assigned his rights in the Agreement, lacks standing. I need not pursue this analysis, however, because the Assignment of Contract does not apply to the Agreement of Purchase and Sale which was executed on February 5 and 9, 2004, and which concerned the 106 East Fulton property. Instead, the Assignment explicitly applies to a "Residential Contract of Sale . . . dated March 29, 2004."

At oral argument Plaintiffs' counsel did not seriously dispute the foregoing analysis. Instead he pointed out that the deed that ultimately was issued transferred title to the 106 East Fulton property to Amerigen Corp. Dkt. No. 12, Ex. D. However, I have been cited to no legal

authority supporting the proposition that this somehow makes Amerigen Corp. a party to the Agreement of Purchase and Sale or otherwise gives it standing to sue for alleged violations of that Agreement.

As a result, I grant the Defendants' motion for summary judgment against Amerigen Corp. and dismiss its claims pursuant to the first, second,[11] and fourth causes of action.

### B. First Cause of Action

The first cause of action alleges that Mako Holdings and Makoujy fraudulently induced Genitrini into entering the Agreement of Purchase and Sale. This inducement allegedly was based upon false and misleading financial information having been provided to him by these Defendants.

In the Complaint Genitrini alleges that prior to the execution of the Agreement of Purchase and Sale, Makoujy and Mako Holdings provided him with a document (Dkt. No. 12, Ex. E) (hereinafter "financial statement") containing "financial information concerning the laundromat and rental of an apartment and office located in the building." Dkt. No. 1 ¶ 13. Genitrini further alleges "[t]hat said financial disclosure statement contained statements which were false and/or misleading." Dkt. No. 1 ¶ 23. As is discussed below, Genitrini also seems to be claiming[12] that he was provided false financial information in another document, an e-mail to him dated February 5, 2004 from Makoujy (hereinafter "Makoujy e-mail"). Dkt. No. 12, Ex. F. In short, false and misleading financial information, allegedly contained in the financial

---

[11] Paragraph "44" of the Complaint suggests that only Genitrini allegedly has been damaged based upon the conduct underlying the second cause of action. Dkt. No. 1 ¶ 44.

[12] The Complaint is not a model of clarity.

statement and the Makoujy e-mail, is the basis for Genitrini's claim in the first cause of action. The Defendants argue that the financial information was not false and misleading.

In paragraph "13" of the Complaint Genitrini alleges: "[T]he Defendant MAKOUJY indicated rents of One Hundred Fifty ($150) Dollars per month and Five Hundred ($500) Dollars per month increasing to One Thousand ($1,000) per month." Dkt. No. 1 ¶ 13. With regard to the rent of $150, this representation is not false and misleading. It is reflected in the financial statement ("Upstairs Tenant") and in the Makoujy e-mail. The Defendants have produced a copy of a lease corroborating rent of $150 per month. Dkt. No. 7, Ex. C. This lease was provided to Genitrini prior to his execution of the Agreement of Purchase and Sale. Dkt. No. 12, Ex. F.[13] In short, the undisputed facts show that the representation of $150 as net rent from the "Upstairs Tenant" was true and accurate.

With regard to the alleged "indication" of rent of $500 to $1,000,[14] the financial statement contains a line for "Office (Expected)." For the month of January, 2004, rental income of $563 is reflected, with an "annualized" income of $6,750 (which presumably was derived, approximately, by multiplying $563 times 12). As noted, this line item explicitly states that the rental income is "Expected." Also, the overall financial statement is prominently marked

---

[13] Defendants assert that this lease was "identified on Exhibit B to the Agreement." Dkt. No. 7 ¶ 10. Page 11 of the Agreement is a sheet of paper containing the statement "Franks lease for upstairs apartment." I do not know what inferences I am expected to draw from this.

[14] This claimed misrepresentation also is alleged in paragraph "24" of the Complaint: "Particularly the Defendant MAKO HOLDINGS INTERNATIONAL, LLC, and RICHARD MAKOUJY, indicated that there were continuing rents of approximately Thirteen Thousand Eight Hundred and no/100 (13,800.00) Dollars per year." Dkt. No. 1 ¶ 24. This figure of $13,800 presumably is based upon the "Upstairs Tenant" monthly rent of $150 ($1,800 on an annualized basis) and "Office" monthly rent of $1,000 ($12,000 on an annualized basis). Similar general allegations are made in paragraphs "25" and "26" of the Complaint.

"Preliminary Draft."

In addition to these notices, the financial statement contained the following footnote:

> \*\*\* A tenant has taken over the office space effective January 2004. No lease is in place. Rent calls for 7.5% of the firm's revenue. To date, no revenue has yet been received. It is expected that the firm will be generating roughly $7,500/month early in 2004 and this figure should increase to $10,000/month by year's end.

The Makoujy e-mail advised Genitrini:

> The office was never rented before Fred took it last month. The previous owner (an attorney) used it, as did I, until last month. Fred's rent fluctuates, as per my previous email, but I expect to get $500/month or so initially, growing closer to $1,000/month over the next year.

One would think that all of the foregoing would have placed a buyer on high alert as to the need for a thorough due diligence investigation. Indeed, it is hard to imagine that reasonable jurors could conclude that Plaintiff justifiably relied[15] on the representations concerning the office rent. However, at this stage of the litigation the Court, while resolving all ambiguities and drawing all reasonable inferences against the Defendants, is simply determining whether a triable issue of fact exits. In this context the affidavit of April 26, 2005, by Fred Newton (who is the "tenant" referred to in the financial statement footnote (Dkt. No. 12, Ex. E) and the "Fred" referred to in the Makoujy e-mail (Dkt. No. 12, Ex. F)) states that the office rent perhaps was going to be 7.5% of his net business revenue, **but only** "up to a maximum of $300 to $400 per month." Dkt. No. 15 ¶ 8.

---

[15] To prevail on his claim of fraudulent inducement Plaintiff must prove, *inter alia*, that he justifiably relied on the alleged misrepresentations. *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 02-CV-7689, 2005 WL 1663265, at *8 (S.D.N.Y. July 18, 2005).

The financial statement footnote states unqualifiedly that "Rent calls for 7.5% of the firm's revenue"; it omits the limiting qualification claimed by Mr. Newton. Similarly, the Makoujy e-mail states that the seller "expect[s] to get $500/month or so initially, growing closer to the $1,000/month over the next year." This is directly contrary to Mr. Newton's sworn statement that the maximum rent would be $300 to $400. I therefore find, reluctantly, that at this stage of the litigation, prior to any discovery, triable issues of fact exist with respect to whether Genitrini was fraudulently induced into entering the Agreement of Purchase and Sale.[16] These factual issues could be material, *e.g.*, whether the monthly office rent was going to be $300 as opposed to $1,000. As a result I deny the Defendants' motion for summary judgment with respect to the first cause of action.[17]

### C.     Second Cause of Action

The Complaint alleges that the Defendants Mako Holdings and Makoujy "warranted that machinery was fit for use in the Laundromat . . . and agreed to replace certain machinery at the time of the closing." Dkt. No. 1 ¶ 27. It further alleges that "the change dispenser and detergent

---

[16] In their motion papers the parties address the issue of the laundromat's non-rental income. Dkt. No. 41 ¶ 22; Dkt. No. 7 ¶ 16. This issue does not appear to be raised in the Complaint. *See* Rule 9(b) of the Federal Rules of Civil Procedure ("the circumstances constituting fraud . . . shall be stated with particularity.")

[17] The Defendants point out that the Agreement of Purchase and Sale explicitly provided for a "Due Diligence" period during which the Plaintiff's obligation to close was conditional until "verification of income and expenses for the property are determined by Buyer to be satisfactory." Dkt. No. 7, Ex. A ¶ 5(f). They also point out that, pursuant to an addendum to the Agreement, the parties agreed that "the Due Diligence Period expired prior to the date hereof, and has not been extended." Dkt. No. 7, Ex. A. Plaintiff's counsel countered, at oral argument, that despite this expiration of the due diligence period the representations contained in the financial statement survived. If so, it is very unclear to me as to what the Defendants received in return for their agreement to reduce the purchase price by $30,000. These facts, in my view, will make for an interesting deposition and/or trial cross-examination of Plaintiff but they do not negate the triable issues of fact raised by the Newton Affidavit.

dispenser did not work," and in addition Genitrini "was required to replace two washing machines." Dkt. No. 1 ¶ 32, 33. The second cause of action therefore alleges breach of warranties.

The Defendants point out in their opposition papers that the Agreement provided as follows:

1. The property and improvements were being sold "in their present 'as is – where is' condition, and with no warranties or representations as to condition . . . ." Dkt. No. 7, Ex. A ¶ 1.

2. "Buyer and Seller acknowledge that the Buyer has had an opportunity to inspect the Property, in accordance with paragraph 5 hereof, and that the Property is being sold in its 'as is – where is' condition and that Seller makes no representations or warranties as to the condition of the Property." Dkt. No. 7, Ex. A ¶ 12.

However, as Plaintiff's counsel asserted at oral argument, these provisions of the Agreement apply to the "property" and "improvements," not to "equipment" or "machinery."

It is true, as Defendants argue, that the due diligence paragraph of the Agreement provides that Genitrini's obligation to close was expressly conditional until "[t]he results of Buyer's full inspection of the property and <u>equipment</u> are determined by Buyer to be satisfactory." Dkt. No. 7, Ex. A ¶ 5(a) (emphasis added). However, as is indicated in footnote 17 above, this due diligence paragraph was impacted by an addendum to the Agreement; pretrial discovery will have to develop just what the impact was. (Perhaps significantly, the language of the due diligence paragraph indicates that the parties knew how to distinguish between "property" and "equipment.")

I find, therefore, that triable issues of fact exist with respect to the alleged breach of

warranties, and I deny Defendants' motion for summary judgment dismissing the second cause of action.

### D. Third Cause of Action

The third cause of action arises out of Defendant Palumbo's sale to Genitrini of residences located at 48 Spring Street and 77 First Avenue, Gloversville ("the Residential Properties"). The Complaint alleges that Palumbo "indicated that the tenants occupy [sic] the premises . . . paid their individual utilities, including water service." Dkt. No. 1 ¶ 47. These statements, according to the Complaint, were known by Palumbo to be untrue and "were solely made to induce the purchase of [the premises] by" him. Dkt. No. 1 ¶¶ 48, 49. In short, Genitrini asserts in the third cause of action that Palumbo fraudulently induced him into purchasing the Residential Properties.

Palumbo argues in support of her motion that Genitrini's claim runs afoul of the merger provision of the Residential Contracts of Sale:

> **28. Miscellaneous**. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

Dkt. No. 7, Ex. H (emphasis in original). However, this is a **general** merger clause, which is ineffective to exclude parol evidence to show fraud in inducing a contract. As stated by the Second Circuit in *Centronics Fin. Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir. 1978):

> Under New York law a well pleaded claim of fraud in the inducement of a contract relied upon by a defendant states a

> sufficient issue for trial, *Sabo v. Delman*, 3 N.Y.2d 155, 159, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 907 (1957), on which parol evidence is admissible in New York . . . . An oral representation which is fraudulent and which induces reliance may be a defense even though it contradicts a provision of a written contract . . . . Only if the written contract included a specific disclaimer of the very representation later alleged to be the foundation for rescission would such proof be barred. *See Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959).

Palumbo also argues that Genitrini's claim of fraud with respect to utilities is belied by disclosures made in closing documents. In this respect Plaintiff's claims seem to shift, based upon the argument with which he is faced, *i.e.*, is he complaining about water service, or gas and electricity, or something else? Again, this might make good fodder for the deposition or trial cross-examination of Plaintiff, but in the context of the pending motion it confirms that trial issues of fact are present. I deny the motion for summary judgment dismissing the third action cause of action.

### E. Fourth Cause of Action

Here Plaintiff asserts a claim for punitive damages against all of the Defendants. In this regard my view is the same as that set forth in *Luten v. Daily News, L.P.*, 97-Civ-2462, 2000 U.S. Dist. LEXIS 3896, at *13 (S.D.N.Y. Mar. 30, 2000): "Although the tenuous grounds upon which plaintiffs bring their claims would suggest that punitive damages are not available, to rule at this time before trial would be premature." *See also DiMarco v. Rome Hosp.*, 88-Civ-1258, 1991 U.S. Dist. LEXIS 16603, at *30 (N.D.N.Y. June 29, 1991). Therefore I deny without prejudice the Defendants' motion with respect to the fourth cause of action.

### F. Makoujy's Personal Liability

Makoujy seeks dismissal of Plaintiff's claims as asserted against him personally on the

ground that he was acting in his role as a corporate officer of Mako Holdings. However, one of the cases that he himself relies upon states that personal liability for a corporate officer may exist if "fraud is involved." *Estate of Gifford*, 144 A.D.2d 742, 744 (3d Dep't 1988). Similarly, as stated in *Rothstein v. Equity Ventures, LLC*, 299 A.D.2d 472, 474 (2d Dep't 2002) (citations omitted): "We agree that members of limited liability companies, such as corporate officers, may be held personally liable if they participate in the commission of a tort in furtherance of company business." *See also* 14A N.Y. Jur.2d, Business Relationships, § 763. Finally, "fraudulent inducement to enter into a contract is actionable in tort in New York State . . . ." *Ritchie v. Landau*, 475 F.2d 151, 156 (2d Cir. 1973). I therefore deny Makoujy's motion for summary judgment dismissing Plaintiff's claims as asserted against him personally.

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' motion for summary judgment dismissing the claims of Amerigen Corp. is **GRANTED**; and it is further

**ORDERED**, that in all other respects the Defendants' motion for summary judgment is **DENIED**; and it is further

**ORDERED**, that **on or before November 18, 2005**, the parties are to electronically file their joint proposed civil case management plan (*see* Dkt. No. 2); and it is further

**ORDERED**, that an initial telephone conference is hereby scheduled for **November 22, 2005 at 9:15 a.m.** Counsel for Plaintiff will be responsible for placing the call using AT&T or any other teleconferencing service. The chambers of the undersigned may be reached by calling 315-234-8618, a dedicated conference call line which may not be used for any other purposes.

**IT IS FURTHER ORDERED**, that prior to the teleconference, Mr. Heimerl file the

necessary paperwork and fee to gain *pro hac vice* admission.  Upon his admittance to this District, Mr. Heimerl shall promptly file a notice of appearance.  This shall be completed **on or before November 22, 2005**.

Dated: November 3, 2005
       Syracuse, New York

George H. Lowe
United States Magistrate Judge